UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GENE CHAMBERS, CHAPTER 7
TRUSTEE FOR THE BANKRUPTCY
ESTATE OF ANGELA BORRERO,                    CASE NO.: 6:24-cv-141-JSS-DCI

    Plaintiff,

V.

PROGRESSIVE SELECT INSURANCE
COMPANY,

    Defendant.

_____ /

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

    Defendant, Progressive Select Insurance Company (hereafter "Progressive"),
pursuant to Rule 3.01, Local Rules of the District Court, Middle District of Florida,
responds in opposition to Plaintiff's Opposed Motion for Leave to File Amended
Complaint (Dkt. 22) as follows:

**I.    Summary:**

    Substantively the amendment should be denied as futile because it tells the
same story as the initial Complaint simply with more immaterial details. It adds no
materially new allegations supporting Plaintiff's claim, and was filed only in an effort
to avoid Progressive's pending Motion for Judgment on the Pleadings (Dkt. 17).
There is no allegation in Plaintiff's proposed amended complaint that resolves the
fundamental problem that there did not exist a joint opportunity communicated by
the claimant to resolve both the bodily injury and property damage claims together

1

because no such fact exists.  Plaintiff cannot establish the required element of causation tying Progressive's handling of the property damage claim to the cause of the failure to settle the bodily injury claim and therefore the bodily injury excess judgment it seeks as damages.

Procedurally Plaintiff's Motion for leave to amend is untimely, filed only as gamesmanship in an effort to defeat Progressive's timely-filed Motion for Judgment. Plaintiff has failed to establish the requisite good cause for an extension of the April 5, 2024 amendment deadline set by this Court's Scheduling Order. (Dkt. 14)  The material issue is whether there was a joint opportunity communicated by the injured claimant to Progressive to resolve both the bodily injury and property damage claim at the same time.  Whether that opportunity existed by the claimant is not something Progressive's claim file was necessary to establish, and no recent discovery obtained from Progressive changed the basis of Plaintiff's alleged cause of action in that regard.  Plaintiff's counsel has had more than a year since the excess judgment was entered to investigate the claim facts with the injured claimant, and apparently did so as the initial Complaint allegations indicate.  He remains to have no basis for this action to proceed.  Accordingly, the discovery of Progressive's claim file does not establish the requisite good cause to permit an amendment to Plaintiff's Complaint after the amendment deadline set by the Court.

## II.  Argument and Memorandum of Law:

### A.  Plaintiff's Motion should be denied as futile.

Progressive acknowledges that leave to amend pursuant to Fed. R. Civ. P.

15(a) is generally freely given when the facts and circumstances a plaintiff relies on "may be a proper subject for relief." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262 (11th Cir. 2004)(citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L.Ed.2d 222 (1962))). However, the Court should deny leave to amend when the amendment would be futile. *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1162–63 (11th Cir. 2019); Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007). "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed" or "immediately subject to summary judgment for the defendant." *Cockrell*, 510 F.3d at 1310; *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir.2004). On the alleged facts, Plaintiff's proposed amended complaint would still be properly dismissed or subject to a judgment as a matter of law in favor of Progressive on a motion for judgment on the pleadings or a motion for summary judgment.

Plaintiff's Motion for Leave to Amend is designed only to try to escape Progressive's pending Motion for Judgment on the Pleadings. It is purely gamesmanship. Plaintiff's proposed amended complaint tells the same story as his initial Complaint. It contains no new material allegations, just more detailed facts about the same theory of liability that are not necessary for a pleading. It is futile because it does not plead any additional allegation sufficient to cure Plaintiff's lack of the essential element of causation, explained in Progressive's pending Motino for Judgment on the Pleadings (Dkt. 17). "[T]he existence of a causal connection is a prerequisite [to recovery for bad faith]-in other words, the claimed damages must be

3

caused by the bad faith." *Perera v. U.S. Fid. & Guar. Co.*, 35 So. 3d 893, 901 (Fla. 2010); *McNamara v. Gov't Employees Ins. Co.*, 30 F.4th 1055, 1059 (11th Cir. 2022)("Importantly, a bad-faith plaintiff must link the insurer's conduct to the insured's injury by proving causation.").

Plaintiff's "claimed damages" are the excess judgment for the bodily injury claim which flowed from the claimant's decision not to accept Progressive's bodily injury policy limits to settle the claim when they were offered shortly after the accident.  Plaintiff has not and cannot in good faith allege that the bodily injury claim did not settle because of any disagreement over the property damage claim because Plaintiff conceded Progressive offered its bodily injury limits within three weeks of the accident (which were not accepted), before any dispute arose over the value of the property damage claim.  Dkt. 22-1, para 5, 24, 34 - 36 (the accident occurred on 10/1/2018, limits were offered on 10/22/2018, 11/7/2018 was the first allegation about dissatisfaction with the property damage claim) .  Plaintiff also has not and cannot in good faith allege that the claimant communicated a specific opportunity for the insurer to jointly resolve both the bodily injury and property damages together, which is the only exception recognized under Florida law to permit the handling of the separate property damage claim to be a legal basis for a lost opportunity to settle the bodily injury claim and therefore satisfy the causation element required in this case.  *See* Dkt. 17 where this issue has been briefed in Progressive's pending Motion.  Indeed, Plaintiff's proposed amended complaint makes it very clear the offer to settle the property damage claim which Progressive

initially responded to with a counteroffer that Plaintiff now alleges is the basis for the bad faith claim, was solely a "property damage demand" seeking a "property damage settlement." (Dkt. 22-1, para. 27 – 35)

Plaintiff has cited no Florida law where a bad faith claim has been permitted to proceed under these circumstances with two separate claims involved but no communicated joint opportunity to settle.    Plaintiff cites general bad faith jurisprudence such as *Harvey v. GEICO General Insurance Co.*, 259 So. 3d 1 (Fla. 2018) and *Berges Infinity Insurance Co.*, 896 So. 2d 665, 677 (Fla. 2004) discussing an insurer's obligations in claim handling.  However, all of those cases involved alleged bad faith claim handling for the claim for which the claimant actually secured the excess judgment.

Plaintiff acknowledges this deficiency, and instead suggests the totality of the circumstances standard applicable in bad faith cases obviates the need for him to allege facts to satisfy the causation element, simply because two separate claims existed arising out of the same accident and Progressive acknowledged and separately adjusted both as it was required to do. (Dkt. 21, p. 10 (Plaintiff's Response to Progressive's Motion for Judgment on the Pleadings filed the same day and referenced within Plaintiff's Motion for Leave at Dkt. 22, p. 9). To wit, he states:

> Yes, all this [alleged bad faith conduct] has to do with the adjustment of the property damage claim, not the bodily injury claim. But the handling of the property damage claim is a part of the totality of the circumstances surrounding the handling of the bodily injury claim. Indeed, Progressive itself linked the two claims. The day before Spalding's October 23, 2018 letter regarding the property damage claim, Progressive sent attorney Perkins a letter retendering the bodily injury limit and acknowledging the need to resolve the property damage claim: "If there are any claims for property

> damage as a result of the accident, please notify me immediately so that I
> may consider those items for payment under our insured's separate property
> damage liability coverage."

(Dkt. 21, p. 11 – 12).  This concept is mistaken and unsupported by Florida law.  A claimant's reason for temporarily rejecting settlement of a property damage claim is not imputed to the separately adjusted bodily injury claim simply because the two claims exist from the same accident.  Totality of the circumstances is an evidentiary standard guiding what facts may be considered in the ultimate question of bad faith, not a substitute for causation.

Plaintiff also suggests no communicated joint opportunity to settle both claims was required, in reliance on the following statement from *Powell v. Prudential Prop. & Cas. Ins. Co.*, 584 So. 2d 12, 14 (Fla. 3d DCA 1991):

> [t]he lack of a formal offer to settle does not preclude a finding of bad faith. …
> [A]n offer to settle is not a prerequisite to the imposition of liability for an
> insurer's bad faith refusal to settle, but is merely one factor to be considered.

(Dkt. 21 p. 12).  Plaintiff's reliance on *Powell* is also misplaced and misapplied.  First, the context of *Powell* was an excess judgment for a bodily injury claim, and the alleged bad faith was based on that bodily injury claim handling.  In this case Plaintiff seeks to collect damages for an injury claim based on the handling of separate property claim that was settled.

Second, the context of the *Powell* court's opinion was a conclusion that no formal settlement demand was required for liability for bad faith there because it established an insurer has "an affirmative duty to initiate settlement negotiations" "where liability is clear and injuries so serious that a judgment in excess of the policy

limits is likely." *Powell* at 14.  Thus bad faith may be established based on a violation of that duty, but that affirmative duty only exists in very specific circumstances. Here, there was no likelihood of an excess judgment for the property damage claim, thus no affirmative duty that would cancel the need for a communicated joint opportunity to settle both the bodily injury and property damages claim if Plaintiff wishes to join them as a basis for his bad faith claim.

Finally, that statement from *Powell* was part of the court's analysis, not the holding establishing precedent.  If Plaintiff had quoted the complete statement from *Powell*, it would reflect that statement was the court's recitation of a holding in *General Acc. Fire & Life Assur. Corp. v. American Cas. Co.*, 390 So.2d 761, 765 (Fla. 3d DCA 1980), rev. denied, 399 So.2d 1142 (Fla.1981).  The *General Accident* opinion is inapposite to the issue here.  It was a lawsuit by an excess insurer against a primary insurer, and again involved only one claim.  A toddler drowned in a neighbor's pool. The pool owner had primary liability insurance of $300,000 with General Accident and excess insurance of $1,000,000 with American Casualty.  As the primary insurer, General Accident controlled the defense of the claim.  The claimants made a demand to settle for $1 million.  General Accident took the position the demand was outrageous, refused to negotiate, and did not tell American Casualty about the demand.  Later American Casualty sent a demand to General Accident that it make an effort to settle the case.  General Accident did not respond. A jury returned a verdict of $700,000. Ultimately the parties agreed to settle at $690,000 – General Accident paid its limits of $300,000 and American Casualty

had to pay the remainder.  American Casualty then sued General Accident for a "bad faith refusal to negotiate with the [claimants] and to settle their claim for a reasonable amount."  General Accident defended arguing it should win as a matter of law because American Casualty could not prove the claimants had offered to settle within the $300,000 General Accident limits.  On those facts, the court concluded the demand to settle within the primary insurer's limits was not required in the specific circumstance between an excess insurer and a primary insurer:

> In summary, an offer to settle within policy limits may be a factor to consider in determining an insurer's good faith in the handling of an insured's defense, but it should not be a prerequisite to the imposition of liability for a primary insurer's bad faith refusal to settle. The rule requiring an offer to settle within policy limits, designed to protect an insured from an insurer, does not apply to situations in which an excess insurance policy is at issue or in which an insured is financially able to pay an excess judgment. [internal citation omitted]. In these situations, the settlement offer is only one factor to be considered in arriving at a determination of bad faith.

*General Accident,* 390 So. 2d 761.

Plaintiff has acknowledged the need for facts establishing causation, and illustrated Progressives point, citing  recitation of the legal cause jury instruction for bad faith cases the court made in *Am. Builders Ins. Co. v. S.-Owners Ins. Co.*, 71 F.4th 847, 854 (11th Cir. 2023) (on rehearing) (cleaned up), cert. denied, 144 S. Ct. 423 (2023):

> The Court of Appeals for the Eleventh Circuit recently expanded upon causation: '[A]ny damages claimed by an insured in a bad faith case must be caused by the insurer's bad faith. That is, the bad faith conduct must directly and in natural and continuous sequence produce or contribute substantially to producing such damage, so that it can reasonably be said that, but for the bad faith conduct, the damage would not have occurred.'

(Dkt. 21, p. 8).

Plaintiff's proposed amended complaint is futile because its alleged bad faith action for the property damage claim handling is subject to dismissal as a matter of law, judgment on the pleadings and/or summary judgment in favor of the defendant because Plaintiff has not alleged and cannot establish the essential element of causation for the bodily injury excess judgment. The amended complaint alleges additional facts, but substantively tells the same story as the initial complaint *See, e.g. Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1163 (11th Cir. 2019)(concluding denial of leave to amend on basis of futility was proper where the two complaints "told essentially the same story," and citing *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir.2004)( affirming dismissal "because the three new claims asserted, like those in [the] first amended complaint, would have been subject to dismissal as a matter of law")).

### B.   Plaintiff's Motion should be denied as untimely and without good cause.

Procedurally Plaintiff's Motion is improper. Plaintiff seeks relief only pursuant to Fed. R. Civ. P. 15(a) (Dkt. 22, p. 1) which does not provide for extension of the Court's scheduling deadlines, although Plaintiff references generally the good cause requirement in Fed. R. Civ. P. 16(b)(4) later in the Motion (Dkt. 22, p. 4). A movant demonstrates "good cause" under Rule 16(b) "by showing that despite the party's diligence, it could not meet the deadline." *Virtus Pharmaceuticals, LLC v. Woodfield Distribution, LLC*, et al, 8:21-CV-2427-WFJ-SPF, 2023 WL 6048794, at *2 (M.D. Fla. Apr. 25, 2023)(citing *Sosa v. Airprint Sys., Inc.,* 133 F.3d 1417, 1419 (11th Cir. 1998).

The deadline for amending pleadings passed on April 5, 2024, a month before plaintiff filed his Motion. (Dkt. 14). Plaintiff's only basis alleging good cause for the late filing is that he received discovery of Progressive's claim file after that deadline. The sum total of the "new" allegations in Plaintiff's proposed amended complaint are quotes and information from Progressive's internal claim notes. However, those were not material allegations necessary to plead any new claim, and they do not change the central problem with Plaintiff's Complaint discussed in the section above.

Plaintiff sought leave to amend only in the face of Progressive's Motion for Judgment on the Pleadings. (Dkt. 17). The material issue affecting the survivability of Plaintiff's action is whether he may plead new, material allegations establishing the requisite causation between alleged bad faith in the claim handing of the bodily injury claim and a lost opportunity to settle the bodily injury claim which led to the excess judgment for that bodily injury claim it seeks as damages

Instead, Plaintiff only pled again, in more detail, alleged bad faith in the property damage claim handling that was settled within limits, which he seeks to impute to the bodily injury claim. That theory of liability turns as a matter of law on whether the claimant communicated to Progressive a joint opportunity to settle both the bodily injury and separate property damage claims together, which Progressive failed to satisfy. Those are facts known to the injured claimant, not something Plaintiff needed Progressive's claim file to discern. Yet discovery of Progressive's claim file is the only basis for alleged good cause Plaintiff asserts to justify extending

the Court's scheduling Order and permitting him leave to file an amended complaint.

That does not constitute good cause for either relief Plaintiff requests. The excess verdict was entered against the insured party / debtor in January, 2023. (Dkt 1-1, para. 22). The excess judgment as entered in April, 2023.  (Dkt. 1-1, para. 23). Plaintiff's counsel was appointed to represent Plaintiff in May, 2023, and Plaintiff was the trustee over the case long before that. (Dkt. 1-1, para. 2).

Plaintiff's counsel had plenty of time between then and filing this action in December, 2023 to investigate the claim and obtain the position of the injured claimant and his communications to Progressive.  That was obvious within the allegations in Plaintiff's initial Complaint.  (Dkt. 1-1, para. 10 – 20).    Either Plaintiff's counsel exercised reasonable diligence for the last year in investigating facts to support this action and the requisite facts do not exist to survive the causation problem, in which case Plaintiff's Motion for Leave should be denied for futility; or Plaintiff's counsel did not exercise reasonable diligence in investigating for the past year and did not establish facts to survive the causation problem and Plaintiff's belated Motion for Leave should be denied for lack of good cause and futility.

Finally, allowing an amendment now while Progressive has already filed a timely Motion for Judgment on the Pleadings would  cause prejudice to Progressive by requiring it to re-do the motion based on additional allegations in a new pleading.  Plaintiff's Motion for Leave should be denied.  *C.f. AMG Trade & Distribution, LLC*

*v. Nissan N. Am., Inc.*, 813 Fed. Appx. 403, 405–06 (11th Cir. 2020)(finding a party could not show good cause for leave to amend where its proposed amended complaint included no factual information in support of a new claim that it had not already alleged, and finding the opposing party would suffer prejudice from an amendment because it had already filed a timely motion for summary judgment.)

Respectfully submitted on May 17, 2024.

> SEGUNDO LAW GROUP
>
> \_\_\_\_\_s/Jenna Worden_____
> **JENNIFER C. WORDEN**
> FBN: 0498191
> 2935 First Avenue North, 2nd Floor
> St. Petersburg, FL 33713
> (727)894-3535
> Counsel for Defendant Progressive
> Service email:  Service@CivilLit.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I submitted the foregoing via CM/ECF which will serve it upon counsel for Plaintiff at the addresses registered with the Court on this 17th day of May, 2024.

> SEGUNDO LAW GROUP
>
> \_\_\_\_\_s/Jenna Worden_____
> **JENNIFER C. WORDEN**
> FBN: 0498191
>  (727) 894-3535
> Service@civillit.com