## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**GENE CHAMBERS, CHAPTER 7**     **Case No.: 6:24-cv-00141-JSS-DCI**
**TRUSTEE FOR THE BANKRUPTCY**
**ESTATE OF ANGELA BORRERO,**

     **Plaintiff,**

**v.**

**PROGRESSIVE SELECT INSURANCE**
**COMPANY,**

     **Defendant.**

_____/

## FIRST AMENDED COMPLAINT

Plaintiff, GENE CHAMBERS, CHAPTER 7 TRUSTEE FOR THE

BANKRUPTCY ESTATE OF ANGELA BORRERO sues Defendant,

PROGRESSIVE SELECT INSURANCE COMPANY and states:

## JURISDICTIONAL ALLEGATIONS

1.    This action is a claim for damages that exceed Seventy-Five Thousand

Dollars ($75,000.00) exclusive of costs, interest and attorney's fees.

2.    Plaintiff, GENE CHAMBERS ("CHAMBERS"), is the duly appointed

trustee of the Bankruptcy Estate of Angela Borrero ("BORRERO"). Pursuant to the

May 4, 2023 Order Approving Employment of Special Counsel to Chapter 7 Trustee

entered in the United States Bankruptcy Court, Middle District of Florida, Trustee

CHAMBERS was authorized to employ the undersigned to prosecute the instant matter. See Exhibit "A".

3.      Defendant, PROGRESSIVE SELECT INSURANCE COMPANY ("PROGRESSIVE"), was and is an Ohio corporation headquartered in Cleveland, Ohio doing business throughout Florida as an automobile insurance carrier.

## FACTUAL ALLEGATIONS

4.      On October 1, 2018, BORRERO was insured under automobile liability policy #909386816-5 issued by PROGRESSIVE, having bodily injury limits of $10,000 per person/$20,000 per occurrence and property damage limits of $10,000.  A copy of the policy is attached as Exhibit "B".

5.      On October 1, 2018, BORRERO was operating her vehicle on County Road 435 in Apopka, Orange County, Florida when she negligently collided with a 2007 Harley-Davidson motorcycle being ridden by James Spalding ("SPALDING").

6.      As a result of the crash, SPALDING was severely injured, his motorcycle was totaled, and his helmet was damaged.

7.      The above-referenced policy was in full force and effect at the time of the crash.

8.      The above-described collision was an event covered by the terms of the PROGRESSIVE policy described above, and BORRERO was afforded bodily injury and property damage liability coverage under the policy.

9.      BORRERO notified PROGRESSIVE of the crash on October 1, 2018.

10.     After receiving notice of the crash, PROGRESSIVE undertook the handling of the SPALDING claims against BORRERO and assigned separate adjusters to handle the bodily injury and property damage claims.

11.     On October 2, 2018, the property damage claim was assigned to PROGRESIVE adjuster Amanda Cool a/k/a Amanda Ploski ("COOL").

12.     Also on October 2, 2018, the bodily injury claim of SPALDING was assigned to PROGRESSIVE adjuster Jowanna Henry ("HENRY").

13.     HENRY's initial claim note of October 2, 2018 indicates that SPALDING's left foot was amputated and he also sustained a fracture to his left arm.

14.     On October 2, 2018, HENRY spoke with BORRERO by telephone. During the initial call HENRY explained the claims process, advised BORRERO that her bodily injury coverage limits were $10,000 per person and $20,000 per accident. HENRY's claim note documents she:

> ---
> ADVISED NOD THAT I WILL KEEP HER UPDATED AS THIS CLAIM PROGRESSES/ EXPLAINED GIVEN EXTENT OF CD'S INJURIES, WILL MOST LIKELY OFFER TO TENDER THE BI LIMITS AVAIL AS SHE WILL BE THE PROX CAUSE OF THE LOSS. NOD UNDERSTANDS AND THANKED ME FOR THE INFO

15.     By October 3, 2018, HENRY's notes reflect that the combination of what appeared to be clear liability and catastrophic injury to SPALDING warranted a proactive tender of BORRERO's bodily injury limits.

16.     On October 4, 2018, PROGRESSIVE supervisor Steven Wolford ("WOLFORD") received HENRY's note and forwarded her request for a proactive tender to "claims legal BTP for review."

17.     On October 5, 2018, Property Damage adjuster COOL called and spoke with SPALDING's father regarding the damage to the motorcycle. COOL's note of that date reflects that SPALDING's motorcycle was likely a total loss.

18.     On October 9, HENRY's claim note reflects receipt of a letter of representation from Dan Newlin and Partners ("NEWLIN FIRM").

19.     On October 10, 2018 PROGRESSIVE in house legal counsel Todd Parnell ("PARNELL") approved the proposed tender letter and release. Apparently PARNELL is "BTP" as referenced in WOLFORD's prior note.

20.     Following PARNELL's approval, HENRY overnighted a proactive tender package including a settlement check and proposed release to the NEWLIN FIRM.

21.     On October 15, 2018, COOL contacted the NEWLIN FIRM and was advised that "they have nothing to do with the PD". COOL also noted that the NEWLIN FIRM did not have a contact telephone number for SPALDING.

22.     On October 15, 2018, Attorney Paul Perkins ("PERKINS") sent a letter of representation to PROGRESSIVE on behalf of SPALDING requesting pertinent insurance coverage information regarding the BORRERO policy pursuant to Fla. Stat. 627.4137. See Exhibit "C".

23.     HENRY noted receipt of PERKINS' letter of representation on October 18, 2018. Thereafter, HENRY contacted the NEWLIN FIRM to discuss the letter of representation from PERKINS.

24.     In a letter dated October 22, 2018,  HENRY, advised PERKINS that the BORRERO policy had bodily injury coverage with limits of $10,000 per person/$20,000 per accident. The October 22 letter went on to state that Progressive was offering to tender its $10,000 in bodily injury coverage in exchange for a release. See Exhibit "D".

25.     HENRY's October 22, 2018 letter acknowledged the need to resolve SPALDING's property damage claim in order to bring the case to a conclusion that would include a release in favor of BORRERO.

26.     HENRY's letter of October 22, 2018 sent by overnight mail to PERKINS on October 23, 2018.

27.     Also on October 23, 2018, SPALDING sent a letter via Certified Mail addressed to PROGRESSIVE property damage adjuster Amanda Polski ("COOL"). See Exhibit "E".

28.     SPALDING's October 23, 2018 letter was a time limited offer to resolve his total loss property damage claim.  SPALDING'S letter included a printout of the Kelley Blue Book value of his motorcycle ($7,190.00), along with receipts and bank statement charges showing the cost of aftermarket parts installed on the motorcycle ($2,187.52), and a receipt for his helmet ($250.00). The letter demanded payment of $9,627.52 to settle SPALDING's property damage claim "within 10 days".

29.     PROGRESSIVE received SPALDING'S October 23, 2018 demand letter on October 25, 2018.

30.     On October 26, 2018, COOL wrote SPALDING a letter in response stating that PROGRESSIVE acknowledging SPALDING's property damage demand for $9,627.52. COOL conceded that PROGRESSIVE had accepted liability on behalf of BORRERO. COOL's letter went on to state that PROGRESSIVE had set up an inspection of the motorcycle and would get the payoff from the motorcycle lienholder. However, the letter did not advise when PROGRESSIVE would respond to SPALDING's time limit demand. See Exhibit "F".

31.     Following receipt of COOL's October 26, 2018 letter, SPALDING permitted PROGRESSIVE to send a representative to his home to inspect and appraise the motorcycle on November 5, 2018. It is unclear whether COOL or PROGRESSIVE asked SPALDING for an extension on his 10-day demand.

32.     On November 7, 2018, PROGRESSIVE claims manager Cheryl Traylor ("TRAYLOR") entered a "File Intervention" note instructing COOL how to calculate the total loss evaluation. TRAYLOR's note does not reflect whether she was aware of SPALDING's October 23 property damage demand letter:

**File Intervention**
Cheryl A. Traylor (CAT0021) **11/07/2018 12:42 PM ET**
REVIEWED
---
NEED TO CORRECT THE SETTLEMENT SUMMARY WITH CORRECT LEASE TAXES OWED
DID MR. SPALDING ACCEPT TL OFFER?  DO WE HAVE PERMISSION TO SPEAK WITH HIM
DIRECTLY?
NEED TO DISPATCH SALVAGE TO PICK UP CV
NEED TO SET UP TL MEET

33.    Later on November 7, 2018, COOL called SPALDING and left a

message for a return call "in regards to PD settlement".

34.    COOL then prepared and sent the following email to SPALDING's

personal email address at 2:12 pm on November 7, 2018:

**Contact Information**
Amanda Cool (A104839) **11/07/2018 02:11 PM ET**
FROM: AMANDA PLOSKI
SENT: WEDNESDAY, NOVEMBER 07, 2018 2:12 PM
TO: 'JAMSPAL407@ICLOUD.COM' <JAMSPAL407@ICLOUD.COM>
SUBJECT: PROGRESSIVE CLAIM # 18-1267000
GOOD AFTERNOON JAMES ,
WE HAVE INSPECTED THE MOTORCYCLE AND THE SETTLEMENT INCLUDING YOUR HELMET IS
BROKEN DOWN BELOW PLEASE LET ME KNOW IF YOU HAVE ANY QUESTIONS .
TOTAL VALUE OF THE BIKE 7874.83
AMOUNT OWNED TO MOTO LEASE $5262.21
HELMET 250
TOTAL CHECK TO YOU 2862.63
AMANDA PLOSKI
CLAIMS ADJUSTER

35.    COOL'S email of November 7, 2018 expressly rejected SPALDING's

October 23, 2018 written offer to settle his property damage total loss claim for

$9,627.52, instead offering just $7,874.83 for the value of the motorcycle plus an additional $250 for the helmet.

36.    After PROGRESSIVE rejected his property damage settlement offer, SPALDING's attorney filed a lawsuit against BORRERO on November 12, 2018. SPALDING's complaint included a count for his bodily injury claim and second count for his property damage claim of $9,627.52. It does not appear that PERKINS sent PROGRESSIVE a copy of the filed complaint. See Exhibit "G".

37.    On November 15, 2018 HENRY called PERKINS office to follow up on the bodily injury tender. HENRY's claim note of that date does not reflect that she was aware of PROGRESSIVE's express rejection of SPALDING's property damage demand.

38.    On November 19, 2018 supervisor TRAYLOR's claim file note referenced the need to follow up with SPALDING on the total loss evaluation again without noting that PROGRESSIVE had expressly rejected SPALDING's property damage demand of $9,657.52.

39.    On November 27, 2018 TRAYLOR notes that she reviewed the file with COOL, that the claim was now 57 days old and that SPALDING had not responded to PROGRESSIVE's counter-offer to his property damage demand. TRAYLOR instructed COOL to send a total loss offer letter to SPALDING and if he did not respond they would then send a "10 day close letter".

40.     On November 28, 2018, COOL (writing as "Polski") sent SPALDING a letter increasing PROGRESSIVE's total loss settlement offer to $8,372.33 without explanation or reference to his demand of $9,627.52: See Exhibit "H".

41.     On November 29, 2018, TRAYLOR notes she again reviewed the file with COOL. TRAYLOR's note reflects that SPALDING "has not responded to accepting the TL offer yet". TRAYLOR instructs COOL to "continue efforts for TL resolution" without acknowledging the rejection of SPALDING's total loss demand. TRAYLOR's note also fails to mention PROGRESSIVE's proactive tender of BORRERO's bodily injury limits that was still pending with PERKINS.

42.     On November 30, 2018, BORRERO contacted HENRY and advised her that she had been served with suit documents from SPALDING. BORRERO emailed HENRY the suit documents later that same day.

43.     On December 3, 2018, WOLFORD reviewed the suit papers noting only "rejected tender". WOLFORD directed the claim file to be transferred to "a LVL 42 rep". The same day, the file was transferred to Claims Specialist Lead Jason Gray ("GRAY").

44.     GRAY's initial file review of December 3, 2018 failed to recognize that SPALDING's property damage total loss offer had been rejected by PROGRESSIVE instead noting incorrectly that PROGRESSIVE had made a total loss offer to SPALDING and had received no response.

**Request For Authority**
Jason D. Gray (JDG0025) **12/03/2018 10:40 AM ET**
REQUEST AUTHORITY FOR OUTSIDE DEFENSE COUNSEL
DIARY TO TLM
-
THERE IS A BI 10/20 PAP AVAILABLE FOR THIS MV VS. MC ACCIDENT.  LIABILITY
APPEARS ADVERSE TO THE INSURED.  THE CLAIMANT SUSTAINED A FOOT AMPUTATION AND
ARM FRACTURE.  PROGRESSIVE PRO-ACTIVELY TENDERED THE $10K BI LIMITS WHICH
WASN'T ACCEPTED.  PCS MADE A T/L OFFER TO THE CLAIMANT AND RECEIVED NO
RESPONSE.  WE NOW HAVE A BI/PD LAWSUIT.  I AM REQUESTING AUTH TO HIRE O/C
DAVID EVELEV OF CSK TO REPRESENT OUR INSUREDS.

45.    On December 3, 2018, GRAY received approval to retain defense counsel David Evelev ("EVELEV") to represent BORRERO.

46.    On December 6, 2018, GRAY wrote PERKINS and stated that the November 28, 2018 letter from COOL contained a "type-o" as it did not include payment for SPALDING's helmet, which PROGRESSIVE agreed was worth $250. GRAY went on to state that PROGRESSIVE was still valuing the motorcycle at $8,372.33. See Exhibit "I".

47.    GRAY's December 6, 2018 letter fails to acknowledge SPALDING's October 22, 2018 letter offering to settle the property damage total loss claim for $9,627.52. Instead, GRAY's letter reiterated PROGRESSIVE's rejection of SPALDING's $9,627.52 property damage demand of October 23, 2018. *Id.*

48.    The following day, defense counsel EVELEV filed an Answer and Affirmative Defenses to SPALDING's Complaint. See Exhibit "J".

49.     On December 14, 2018, GRAY wrote PERKINS a letter that falsely claimed that SPALDING's bodily injury claim "was settled on October 22, 2018" and demanded the return of an executed release. See Exhibit "K".

50.     GRAY wrote PERKINS again on December 27, 2018.  Despite the fact that the property damage count in SPALDING's Complaint referenced the $9,627.52 demanded by SPALDING in his October 22, 2018 letter, once again GRAY failed to acknowledge that PROGRESSIVE had expressly rejected SPALDING's offer to settle his total loss claim. Instead, GRAY states that he "wanted to clarify your current demand to settle the property damage claim". See Exhibit "L".

51.     On January 3, 2019, PROGRESSIVE's claims attorney PARNELL noted his review of the file and discussion with GRAY. PARNELL's note incorrectly summarizes the history of the claim stating: "We tendered the BI limit early on in this case and extended multiple offers for the PD. There have been no demands." PARNELL directed GRAY to offer to pay the $9,627.52 in property damage alleged in the Complaint "plus statutory interest of $46.84 since the date of our last offer, in an effort to amicably resolve the PD claim."

**File Intervention**
Todd Parnell (BTP0001) **01/03/2019 02:57 PM ET**
PARNELL-LEGAL:  DISCUSSED W/ JDG.  WE TENDERED THE BI LIMIT EARLY ON IN THIS
CASE AND EXTENDED MULTIPLE OFFERS FOR THE PD.  THERE HAVE BEEN NO DEMANDS.
UPON REVIEWING THE COMPLAINT, PLAINTIFF LISTS PD OF EXACTLY $9,627.52.  SO,
WHILE WE BELIEVE OUR PD EVALUATION WAS ACCURATE, WE WILL TENDER THE AMOUNT
LISTED IN THE COMPLAINT, PLUS STATUTORY INTEREST OF $46.84 FROM THE DATE OF
OUR LAST OFFER, IN AN EFFORT TO AMICABLY RESOLVE THE PD CLAIM.

52.     On January 3, 2019, Lead Claim Specialist GRAY wrote PERKINS

the following letter expressing the offer proposed by PARNELL:

Dear Mr. Perkins:

On December 6, 2018, I wrote you with an offer to settle your client's property damage claim. Since that time, I have seen the complaint you filed in the above referenced lawsuit. While we believe our property damage evaluation is accurate, in an effort to amicably resolve your client's property damage claim we are tendering $9,674.36 in exchange for a release and/or dismissal with prejudice of the property damage claim. This offer includes the $9,627.52 your client is seeking in the complaint plus $46.84 in statutory interest from the date oour last offer made on December 6, 2018 thru January 4, 2019. Enclosed you will find our property damage settlement draft in the amount of $9,674.36 made payable to Paul & Perkins, P.A. Trust Account f/b/o James Spalding, as well as our **proposed** release.

Our tender is not conditioned upon the execution of any particular form of release. If you have any objections to the language contained in the proposed release, please contact me immediately to discuss.

Sincerely,

Jason Gray
Claims Specialist Lead
407-618-8702
Fax: 407-618-8836

See Exhibit "M".

53.     Curiously, GRAY's January 3, 2019 letter falsely claims that he had not

had an opportunity to review SPALDING's Complaint when he wrote his letter of

December 6, 2018.

54.     Given PROGRESSIVE's express rejection of SPALDING's October 22,

2018 property damage demand and the subsequent correspondence from GRAY that:

(i) first, reiterated PROGRESSIVE's rejection of SPALDING's total loss offer; (ii)

second, falsely claimed the bodily injury claim was settled on October 22, 2018; (iii)

sought to clarify the current demand to settle the property damage claim when the

property damage count in the damage sought the exact amount SPALDING

demanded by letter in October of 2018; and (iv) suggested that PROGRESSIVE did not learn of SPALDING's $9,627.52 property damage offer until GRAY read the Complaint sometime after December 6, 2018, it is not at all surprising that PERKINS did not accept PROGRESSIVE's revisionist history, but instead recognized that PROGRESSIVE had woefully mishandled the claims against BORRERO to the extent that it made more sense to proceed to judgment on SPALDING's claims in order to pursue a bad faith claim for the inevitable excess judgment. See Exhibit "N".

55.    PROGRESSIVE manager Tammy Morgan reviewed the file with GRAY on January 4, 2019, and acknowledged a conversation between defense counsel EVELEV and PERKINS that confirmed that suit was filed against BORRERO "as a result of the carrier lowballing [SPALDING] on the PD claim."

**File Intervention**
**Tammy L. Morgan (TLM0045) 01/04/2019 10:41 AM ET**
REVIEWED W/ JDG.  APPEARS DC HAS SPOKEN NOW W/PA WHO INDICATES THAT HE
INITIATED LITIGATION AS A RESULT OF THE CARRIER LOWBALLING HIS CLIENT ON THE
PD CLAIM.  WHILE ACKNOWLEDGING THE TIMELY TENDER ON THE BI CLAIM, HE SEEMS TO
FEEL THAT THE CARRIERS ACTIONS ON THE PD CLAIM HAS EXPOSED THE INSURED TO AN

EXCESS VERDICT.  HE FURTHER INDICATED THAT HE HAS NO INTEREST IN DISCUSSING A
RESOLUTION OF THE PD CLAIM.
DEFENSE HAS BEEN ASSIGNED.

56.    PROGRESSIVE then turned its attention to belatedly attempting to resolve SPALDING's property damage count to provide cover in a subsequent bad faith claim while ignoring the reality that BORRERO was now exposed to a multi-million-dollar judgment due to PROGRESSIVE's mishandling of the property damage claim.

57.     PERKINS and SPALDING eventually agreed to resolve the property damage count by accepting a proposal for settlement served on behalf of BORRERO.

58.     Notwithstanding the resolution of the property damage count during the litigation, the bodily injury clam against BORRERO continued through the litigation process. Shortly before a scheduled jury trial, facing the certainty of a multi-million excess judgment, BORRERO petitioned for protection in bankruptcy pursuant to 11 USC §701, *et seq*.

59.     BORRERO's bankruptcy filing resulted in the appointment of CHAMBERS as the Bankruptcy Trustee and the assignment to the Trustee of all non-exempt assets of BORRERO, including the instant action.

60.     On December 7, 2022, SPALDING filed an Emergency Motion for Relief from Stay in BORRERO's bankruptcy case which was granted by the bankruptcy Judge. See Exhibit "O".

61.     The case against BORRERO proceeded to trial. On January 27, 2023, the jury returned a verdict in favor of SPALDING and against BORRERO in the amount of Seven Million Four Hundred and Ninety-One Thousand Three Hundred and Sixty-Four and 63/100 Dollars ($7,491,364.63). See Exhibit "P".

62.     On April 27, 2023, the trial court entered a Final Judgment against BORRERO in the amount of Seven Million Four Hundred and Eighteen Thousand Three Hundred and Ninety-One and 57/100 Dollars ($7,418,391.57). The Final Judgment provided that execution was stayed subject to further order of the bankruptcy court. See Exhibit "Q".

63.     The Final Judgment remains unpaid and outstanding while continuing to bear interest at the legal rate.

## COUNT I – COMMON LAW BAD FAITH AGAINST PROGRESSIVE SELECT INSURANCE COMPANY

64.     Given the nature of the collision and the significant bodily injuries and property damage losses suffered by SPALDING, a reasonably prudent person faced with the prospect of paying the full value of these claims would have settled both the bodily injury and property damage claims within the limits of available coverage if it had been possible to do so.

65.     PROGRESSIVE had opportunities to settle SPALDING's bodily injury and property damage claims arising out of the October 1, 2018 accident against BORRERO within the available coverages.

66.     PROGRESSIVE correctly determined within days of the wreck that it was a case of liability on the part of their insured coupled with catastrophic injuries to SPALDING, including amputation of the left foot.

67.     However, PROGRESSIVE's decision to proactively tender its $10,000 bodily injury limits to SPALDING did not satisfy its ongoing fiduciary obligation to act in good faith throughout the duration of the claims process.

68.     For example, there is no evidence of ongoing efforts by PROGRESSIVE management or in house legal counsel to ensure that ample attention and urgency were applied to the evaluation and settlement of SPALDING's property damage case once the bodily injury limits were proactively tendered on October 10, 2018.

69.   SPALDING's letter of October 23, 2018 was a time limit settlement demand of his property damage total loss claim. However, PROGRESSIVE failed to calendar and diary the letter as a time demand and as a result neither management nor claims legal were involved in the evaluation and response to SPALDING's property damage demand which was presented while he was pondering PROGRESSIVE's proactive tender of the bodily injury limits.

70.   By arbitrarily rejecting SPALDING's property damage demand, PROGRESSIVE placed its own interests ahead of BORRERO's in an effort to accomplish the company-wide goal of minimizing total loss property damage exposures.

71.   Further, PROGRESSIVE did not advise BORRERO of SPALDING's property damage demand and its intended response to the demand.  As a result, BORRERO was not offered the opportunity to question PROGRESSIVE's response or personally contribute to the difference between SPALDING's demand and PROGRESSIVE's intended offer.

72.   Because of the contract and relationship between PROGRESSIVE and BORRERO, PROGRESSIVE owed BORRERO a non-delegable fiduciary duty of good faith with respect to the investigation, evaluation, negotiation, settlement and defense of the claims presented against her as a result of the October 1, 2018 accident.

73.   This fiduciary duty is akin to that between an attorney and client, and obligated PROGRESSIVE to:

a. Act fairly and honestly and with due regard for the interests of BORRERO;

b. Settle all of SPALDING's claims against BORRERO when, under all of the circumstances, it could have and should have done so had it acted fairly and honestly, and with due regard for her interests;

c. Exercise reasonable diligence and a level of care commensurate with the undertaking, in every aspect of handling SPALDING's claims against BORRERO;

d. Adopt and implement standards for proper investigation and handling of liability claims, commensurate with the needs of the types of claim that could be reasonably anticipated to be made against an insured;

e. Properly train adjustors and claims personnel for the types of claims over which they would be assigned;

f. Communicate with BORRERO candidly and with integrity and keep her informed of the claim resolution process including the settlement demands and offers;

g. Fully, honestly, and promptly advise BORRERO concerning any settlement opportunities, of the likelihood of a recovery in excess of the policy limits, of the steps she might take to avoid the same, and of any procedures which were available to lessen the financial impact of the underlying claims upon BORRERO;

h.  Avoid putting PROGRESSIVE's own interests ahead of the interests of BORRERO;

i.  Handle SPALDING's claims in accordance with applicable laws, statutes, administrative codes, governmental and industry regulations that establish the obligations and standards for liability insurance companies handling claims, as well as PROGRESSIVE's own policies for handling claims.

74.  PROGRESSIVE breached its non-delegable fiduciary duty of good faith owed to BORRERO by failing to settle the claims against her and otherwise acted in bad faith by, among other things:

a.  Failing to act fairly and honestly and with due regard for the interests of BORRERO;

b.  Failing to settle SPALDING's bodily injury and property damage claims against BORRERO when, under the circumstances, it could have and should have done so, had it acted fairly and honestly, and with due regard for the interests of BORRERO;

c.  Failing to exercise reasonable diligence and a level of care commensurate with the undertaking, in every aspect of handling SPALDING's claims against BORRERO;

d.  Failing to adopt and implement standards for proper investigation and handling of liability claims, commensurate with the needs of the types

of claim that could be reasonably anticipated to be made against an insured;

e.  Failing to properly train adjustors and claims personnel for the types of claims for which they would be assigned;

f.  Failing to communicate with BORRERO candidly and with integrity and keep her informed of the claim resolution process including the settlement demands and offers;

g.  Failing to fully, honestly, and promptly advise BORRERO concerning any settlement opportunities, of the likelihood of a recovery in excess of the policy limits, of the steps she might take to avoid the same, and of any procedures which were available to lessen the financial impact of the underlying claim upon BORRERO;

h.  Putting PROGRESSIVE's own interests ahead of the interests of BORRERO;

i.  Failing to handle the bodily injury and property damage claims in accordance with applicable laws, statutes, administrative codes, governmental and industry regulations that establish the obligations and standards for liability insurance companies handling claims, as well as PROGRESSIVE's own policies for handling claims.

75.  As a direct, proximate, and foreseeable result of PROGRESSIVE's breach of its fiduciary duty of good faith, BORRERO suffered damages including entry of an excess Final Judgment.

76.     SPALDING's claims against BORRERO, under all of the circumstances, could have and should have been settled within the available limits of the available insurance coverages had PROGRESSIVE acted fairly and honestly and with due regard for the interests of BORRERO.

77.     As a result of the failure of Defendant, PROGRESSIVE, to protect the interests of its insured, Plaintiff, GENE CHAMBERS, as the Chapter 7 Trustee for the Bankruptcy Estate of ANGELA BORRERO, has been required to employ the undersigned attorney in this proceeding and has agreed to pay a reasonable fee for those services.

78.     All conditions precedent to Plaintiff's rights to bring this suit have occurred or have been excused.

WHEREFORE, Plaintiff, GENE CHAMBERS, CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF ANGELA BORRERO, demands judgment against PROGRESSIVE in excess of $75,000.00, including:

1.     All unpaid and unsatisfied amounts of the Final Judgment entered against ANGELA BORRERO;

2.     Accrued interest on the Final Judgment;

3.     Consequential damages including costs of this action and attorney's fees.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff, GENE CHAMBERS, as the Chapter 7 Trustee for the Bankruptcy Estate of ANGELA BORRERO, demands a trial by jury on all issues so triable.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 21st day of June, 2024, a true and correct copy of the foregoing document has been electronically filed by using the Clerk of Court by using CM/ECF eFiling system which will automatically electronically furnish a copy to: Jennifer C. Worden, Esq., Segundo Law Group, 2935 First Avenue North, 2nd Floor, St. Petersburg, Florida  33713 (Service@CivilLit.com).

**DELLECKER WILSON KING**
**McKENNA RUFFIER & SOS**
**A Limited Liability Partnership**

BY:  <u>s/ Kenneth J. McKenna</u>
       Kenneth J. McKenna, Esq.
       Florida Bar No. 0021024
       Ryan K. Young, Esq.
       Florida Bar No. 112782
       719 Vassar Street
       Orlando, Florida 32804
       407-244-3000
       KJMeservice@dwklaw.com
       RKYeservice@dwklaw.com
       Attorneys for Plaintiff