UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GENE CHAMBERS, CHAPTER 7
TRUSTEE FOR THE BANKRUPTCY
ESTATE OF ANGELA BORRERO,            CASE NO.: 6:24-cv-141-JSS-DCI

    Plaintiff,

V.

PROGRESSIVE SELECT INSURANCE
COMPANY,

    Defendant.

_____ /

## <u>DEFENDANT'S RENEWED MOTION FOR JUDGMENT ON THE PLEADINGS AND INCORPORATED MEMORANDUM OF LAW</u>

Defendant, Progressive Select Insurance Company (hereafter "Progressive"), pursuant to Rule 12(c), Federal Rules of Civil Procedure, and Rule 3.01, Local Rules of the District Court, Middle District of Florida, files its Renewed Motion for Judgment on the Pleadings and hereby requests entry of an order granting judgment in its favor as a matter of law.  In support of its Motion, Progressive states as follows:

1. This action arises from an October 1, 2018 traffic accident involving a non-party claimant, James Spalding, and Progressive's insured, Angela Borrero, who was at fault.  In the First Amended Complaint filed on June 21, 2024 (Dkt. 25), Plaintiff alleges that Progressive failed to settle Mr. Spalding's claims against Ms. Borrero in good faith resulting in an excess Final Judgment in the amount of Seven Million Four Hundred and Eighteen Thousand Three Hundred and Ninety-One and 57/100 Dollars

1

($7,418,391.57) that was entered on April 27, 2023 in favor of Mr. Spalding and against Ms. Borrero for Mr. Spalding's bodily injury damages.

2. Ms. Borrero was insured under automobile liability policy #909386816-5 issued by Progressive, having bodily injury liability limits of $10,000 per person/$20,000 per occurrence and a separate property damage liability coverage with limits of $10,000. (Dkt. 25 at ¶ 4).

3. Progressive assigned two separate adjusters to handle the two claims: Amanda Cool a/k/a Amanda Ploski for Mr. Spalding's property damage claim (Dkt. 25 at ¶ 11) and Jowanna Henry for his bodily injury claim (Dkt. 25 at ¶ 12).

4. Plaintiff's First Amended Complaint acknowledges that, by October 22, 2018 – within 3 weeks of the accident and before any litigation was commenced – Progressive had tendered the full bodily injury limits of $10,000 to Mr. Spalding's then-attorney to settle Mr. Spalding's bodily injury claim. (Dkt. 25 at ¶ 24; *see also* Exhibit D to the First Amended Complaint, Dkt. 25-4)

5. That was the second time Progressive had offered to tender its bodily injury limits to Mr. Spanding -- Progressive had previously offered the $10,000 bodily injury limit to a prior attorney representing Mr. Spalding on October 11, 2018, just 10 days after the accident. (Dkt.25 at ¶ 20; Dkt. 39, Affirmative Defense 2).

6. The allegations in the Plaintiff's First Amended Complaint concerning Progressive's alleged bad faith conduct are solely based on Progressive's

handling of Mr. Spalding's *property damage* claim. (Dkt. 25 at ¶¶ 17 − 35, 38-41, 44. 46-47, 50-52, 54-57). Plaintiff alleges that Progressive failed to accept Mr. Spalding's October 23, 2018 demand for a payment of $9,627.52 to settle SPALDING's property damage claim "within 10 days".

7. Mr. Spalding's property damage claim, however, did not form any part of the excess judgment against Progressive's insured, Ms. Borrero.

8. On January 3, 2019 − within 90 days of receipt of his pro se demand dated October 23, 2018 - Progressive tendered the amount he demanded. (Dkt. 25 at ¶57; Dkt. 39, Affirmative Defense 2). Thereafter, Mr. Spalding's property damage claim was resolved through a mutually agreed settlement on February 25, 2019 for an amount within the separate property damage coverage under Ms. Borrero's policy, and was not part of the Final Judgment entered in favor of Mr. Spalding and against Borrero on which Plaintiff relies as the damages sought in this case. (Dkt. 9, Affirmative Defense 3).

9. As clearly reflected on the Verdict Form, Mr. Spalding's recovery from Borrero consisted entirely of damages for his medical expenses in the past and in the future, lost wages, and pain and suffering. *See* the Verdict Form attached to the First Amended Complaint as Dkt. 25-16. The Verdict Form does not list any property damages. *See id*. The only claim which proceeded to trial in 2023 was the bodily injury claim, for which Progressive had tendered limits twice within days of the accident in 2018. (Dkt. 39, Affirmative Defenses 1,2 and 3).

10. The principal "damages" claimed in the present bad faith action are the amount of the verdict which was converted to an excess judgment entered against Ms. Borrero solely for Mr. Spalding's bodily injury damages. (Dkt. 25 ¶¶ 57-58, 61-63; Dkt. 25 at Count I Wherefore clause PageID412; see also the Verdict Form attached to the First Amended Complaint as Dkt. 25-16)

11. Absent specific, narrowly defined circumstances under Florida bad faith law, the handling of one claim under one type of liability insurance coverage (property damage in this case) cannot form the basis for collecting damages for an alleged bad faith failure to settle a different claim under a different and distinct type of liability insurance coverage (bodily injury in this case), even when that other claim results in an excess judgment. The reason is that, under Florida's bad faith law, the alleged bad faith claim handling must be the proximate cause of the excess judgment.[1] Plaintiff has failed to plead nor can he plead any facts supporting an allegation that any aspect of the claim handling activities of the Progressive's property damage adjuster (or her supervisors) caused the excess judgment for Mr. Spalding's bodily injury claim. Likewise, since Progressive assigned two separate adjusters to handle the two claims separately (*see* Dkt. 25 at ¶ 11-12), the First Amended Complaint lacks factual allegations regarding how the allegedly deficient claim handling by the property damage adjuster and her supervisors resulted in a

---

[1] *See e.g. Perera v. U.S. Fid. &Guar. Co.,* 35 So. 3d 893, 904 (Fla. 2010).

4

failed opportunity to settle the bodily injury claim handled by a different adjuster.

12. This is especially true since Progressive's tender of the bodily injury limits occurred **<u>before</u>** Mr. Spalding sent his October 23, 2018 letter that formulated, for the first time, the amount he was seeking for his property damage claim.  Mr. Spalding's October 23, 2018 letter solely contained a demand for property damage.  How Progressive's property damage adjuster responded to that letter forms the basis for the Plaintiff's claims that Progressive acted in bad faith.  There are no allegations in the First Amended Complaint that the second bodily injury limit tender on October 22, 2018, a day before Mr. Spalding's property damage demand letter was ever written, was not done in good faith.

13. The facts, as alleged in the First Amended Complaint and as clarified in the Defendant's Answer and Affirmative Defenses, make it clear that, despite the lengthy recitation of Progressive's allegedly deficient handling of the property damage claim, there was no opportunity to settle the bodily injury claim that Progressive missed, ultimately resulting in an excess judgment against its insured.

14. Progressive proactively offered to tender bodily injury limits on October 11, 2018 – 10 days after the accident, and again on October  22, 2018  - 21 days after the accident.  Simply because Mr. Spalding ultimately rejected the tenders, opted to initiate litigation and the case proceeded to an excess

verdict, does not equate to a missed opportunity to settle on the part of Progressive as there simply is no causal link between claim handling and the excess judgment.

15. The First Amended Complaint plainly lacks a causal link between the allegedly deficient handling of the property damage claim and the excess judgment entered on April 27, 2023. In his October 23, 2022, letter, Mr. Spalding formulated a specific demand to resolve his property damage claim and only his property damage claim.  On January 3, 2019 – within 90 days of Mr. Spalding's demand -- Progressive tendered the amount Mr. Spalding demanded plus statutory interest and that claim was resolved.  The only claim which resulted in an excess judgment on April 27, 2023, was bodily injury. Therefore, any bad-faith handling of the property damage claim cannot form a basis for a bad faith action for an excess judgment that does not contain any recovery for property damage, since it lacks a causal connection.

16. Under Florida bad faith law, there are narrowly defined circumstances where a bad faith claim may arise if the claimant communicates to the insurer a specific opportunity for the insurer to **jointly** resolve both the bodily injury damages and the property damages at the same time. There was no such joint demand here and in fact the only demand was for the property damage claim which was resolved.  Plaintiff's First Amended Complaint did not allege that there was ever an opportunity offered to Progressive to jointly resolve both claims.  Instead, Plaintiff's First Amended Complaint repeatedly emphasized

that Mr. Spalding's October 23, 2018 demand was for property damage only and Progressive's alleged subsequent rejection/counteroffer and failure to accept was solely related to his October 23, 2022 property damage claim.[2] Plaintiff explicitly states so within the allegations of Count I: "SPALDING's letter of October 23, 2018 was a time limit settlement demand of his **property damage total loss claim"**.  Dkt. 25 at ¶69 (emphasis added). Since Progressive had already tendered its bodily injury limits by the time Mr. Spalding made his property damage demand, it cannot retroactively form a basis for allegations that the handling of the property damage claim affected the bodily injury damages tender had had already occurred. And because the property damage claim was resolved shortly after the demand and did not form a part of the judgment, there is no plausible way the handling of the property damage claim contributed to or proximately caused the excess judgment plaintiff now attempts to collect.

17. Because Progressive's handling of **the property damage claim** as alleged by Plaintiff, even if true, did not cause a lost opportunity to settle **the bodily**

---

[2] Dkt. 25 at ¶35 ("property damage total loss claim"; ¶36 ("property damage settlement offer"; ¶37 ("property damage demand";  ¶38 ("property damage demand"; ¶39 ("counter-offer to his property damage demand"; ¶41 ("rejection of SPANDING's total loss demand"; ¶44 ("property damage total loss offer"; ¶47 ("property damage total loss claim"; ¶50 ("failed to acknowledge ... expressly rejected SPANDLING's offer to settle his total loss claim"; ¶54 ("express rejection of SPANDLING's October 22, 2018 property damage demand ... rejection of SPANDING's total loss offer"; ¶55 ("the suit was filed against BORRERO 'as a result of the carrier lowballing [SPANDING} on the PD claim'"; ¶56 ("mishandling of the property damage claim").

**injury claim**, the required element of causation is lacking and Progressive is entitled to judgment on the pleadings.

18. Additionally, Progressive is entitled to a judgment pursuant to §624.155(4)(a), Fla. Stat. (2023) that provides that "[a]n action for bad faith involving a liability insurance claim, including any such action brought under the common law, shall not lie if the insurer tenders the lesser of the policy limits or the amount demanded by the claimant within 90 days after receiving actual notice of a claim which is accompanied by sufficient evidence to support the amount of the claim." Because Progressive tendered within the 90-day window, it is entitled to a judgment in its favor.

19. Progressive previously filed a Motion for Judgment on the Pleadings (Dkt. 17). Because Plaintiff subsequently filed the First Amended Complaint, Progressive's Motion for Judgment on the Pleadings was denied as moot. (Dkt. 26).

20. Since then, Progressive has filed its Answer to Plaintiff's First Amended Complaint (Dkt. 39), the deadline to amend the pleadings has passed, thus the pleadings are now closed and Progressive's current Motion is timely.

## **MEMORANDUM OF LAW**

### **A. LEGAL STANDARD FOR MOTION FOR JUDGMENT ON THE PLEADINGS**

A motion pursuant to Rule 12(c) seeks judgment on the pleadings and may be brought "[a]fter the pleadings are closed-but early enough not to delay trial." Fed. R.

Civ. P. 12(c). The Pleadings are now closed. *See e.g. McGuigan v. Conte*, 629 F.Supp.2d 76 (D. Mass. 2009)(providing the pleadings are closed once a complaint and answer has been filed). The case is in the early stages of discovery two months after Defendant answered the latest amended complaint and is well before trial. There is no reasonable basis to conclude this Motion would delay trial.

A judgment on the pleadings is appropriate where there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts. *Hawthorne v. MAC Adjustment, Inc.,* 140 F.3d 1367 (11th Cir.1998). A judgment on the pleadings should be granted when the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 12(c); *Ortega v. Christian*, 85 F. 3d 1521, 1524 (11th Cir. 1996).

In resolving such a motion, the district court applies the same standard as is applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Hence, the court is confined to a review of the allegations and documents pled in the complaint and the answer, accepting those allegations as true, and must resolve any factual issues in a manner favorable to the non-movant. "For purposes of a motion for judgment on the pleadings, all the non-moving party's pleadings are taken as true, and, if denied, the moving party's allegations are taken as false." *See United States v. Kahn*, 2003 WL 22384761, at *2 (M.D. Fla. Sept. 2, 2003) (citing *Stanton v. Larsh*, 239 F.2d 104, 106 (5th Cir. 1956)). "To decide a motion for judgment on the pleadings, a court may consider any of the pleadings, including the complaint, the answer, and any written instruments attached to them," *Burgest v. Bd. of Regents*, No. 4:19-cv-335, 2021

9

U.S. Dist. LEXIS 59569 at * 4 (S.D. Ga. Mar. 29, 2021), "without converting the motion into one for summary judgment." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). Judgment is then appropriate only where the moving party clearly establishes that no material issue of fact remains unresolved and that it is entitled to judgment as a matter of law. *Bryan Ashley International Inc. v. Shelly Williams Industries, Inc.*, 932 F. Supp. 290 (S.D.Fla.1996).

## B.  INSURANCE BAD FAITH AND THE ELEMENT OF CAUSATION

This case is before this Court on diversity jurisdiction. In diversity actions, the federal court must apply the substantive law of the state in which it sits, "except in matters governed by the Federal Constitution or by act of Congress." *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).

Florida's standard jury instruction sets forth the bad faith law for a claimed failure to settle by an insurer as follows:[3]

> Bad faith on the part of an insurance company is failing to settle a claim when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward [its policyholder] [its insured] [an excess carrier] and with due regard for [his] [her] [its] [their] interests.

Florida courts have determined "there must [also] be a causal connection between the damages claimed and the insurer's bad faith" in order to constitute a recoverable bad faith claim against an insurer.  *Perera v. U.S. Fid. & Guar. Co.,* 35 So.3d 893, 903–04 (Fla.2010); *Barnard v. Geico General Ins. Co.*, 448 Fed. Appx.

---

[3] Florida Standard Jury Instruction 404.4 INSURER'S BAD FAITH (FAILURE TO SETTLE), and Notes for use in jury instruction 404.4, 35 So.3d at 721 Notes for use

940, 944 (11th Cir.(Fla.) Dec 09, 2011); *Maldonado v. First Liberty Ins. Corp.*, 546 F. Supp. 2d 1347, 1353 (S.D. Fla. 2008), aff'd 342 Fed. Appx. 485 (11th Cir. 2009) (citing *Auto Mut. Indent. Co. v. Shaw,* 184 So. 852, 859 (Fla. 1938)); *Boateng v. Geico General Ins. Co.,* 2010 WL 4822601, (S.D.Fla.2010); *Macola v. Government Employees Ins. Co.*, 953 So.2d 451, 458 (Fla.2006).

The causal connection between the carrier's bad faith and the damages claimed in a bad faith case occurs when the bad faith conduct <u>causes</u> the failure to settle, resulting in a lawsuit and, ultimately, in a judgment against the insured that exceeds the policy limits.  That is what Florida bad faith jurisprudence refers to when discussing the need to allege and prove a causal connection between the bad faith conduct and the excess judgment or "damage."  *See, e.g. Perera v. U.S. Fid. & Guar. Co.*, 35 So. 3d 893, 904 (Fla. 2010)(finding "no causal connection between [the insurer's] bad faith and the damages claimed," after concluding no conduct by the insurer caused the lost opportunity to settle, which in that case was a lost opportunity to settle for significantly less); *see also Harvey v. GEICO*, 259 So. 3d 1, 7 (Fla. 2018)(any claimed damages must be caused by the insurer's bad faith); *Mesa v. Clarendon Nat. Ins. Co.*, 799 F.3d 1353, 1359 (11th Cir. 2015) (stating that a valid bad faith claim requires a causal connection between the damages claimed and the insurer's bad faith).  Accordingly, where alleged bad faith conduct is not a cause of the excess judgment, it is irrelevant. See *Mesa*, 799 F.3d at 1360.

Thus, a bad faith claim under Florida law has two elements: (1) bad faith

2.

conduct by the insurer, which (2) <u>caused</u> an excess judgment to be entered against the insured *because of a lost opportunity by the insurer to settle that claim* and avoid litigation that ultimately culminated in an excess judgment. *Ilias v. USAA Gen. Indem. Co.*, 61 F.4th 1338, 1344 (11th Cir. 2023)(citing *Perera,* 35 So. 3d at 899)(emphasis added).   Therefore, any damages claimed by the insured (or the claimant standing in his shoes) "must be caused by the insurer's bad faith" that caused the lost opportunity to settle *Am. Builders Ins. Co. v. Southern-Owners Ins. Co.*, 56 F.4th 938, 945 (11th Cir. 2023).   Obviously, if an insurer settles a claim within policy limits, no cause for bad faith lays since the basic premise of bad faith litigation and the need for remedy are absent: there is no litigation and no judgment in excess of the policy limits that would expose the insured to uncovered liability.

The bad faith alleged by Plaintiff here is specifically with respect to Progressive's handling of the property damage claim, not the bodily injury claim.  As noted above, Progressive received a property damage demand from Mr. Spalding after it had already tendered its bodily injury policy limits.  Therefore, all activities associated with the handling of the property damage claim occurred well after the bodily injury limits had already been tendered.  Yet it is not the property damage but the excess bodily injury judgment that Plaintiff is seeking as damages.  Because Progressive's handling of the property damage claim, and the ultimate settlement of that claim for an amount within the policy limits, could not be deemed a lost opportunity to settle the separately adjusted bodily injury claim under Florida law, Plaintiff cannot establish the requisite causation element to recover the amount of

the bodily injury judgment as damages against Progressive under the facts of this case.

## C. THE ABSENCE OF <u>A JOINT DEMAND</u> TO SETTLE BODILIY INJURY AND PROPERTY DAMAGES DEFEATS PLAINTIFF'S ATTEMPT TO COLLECT THE BODILY INJURY JUDGMENT AGAINST PROGRESSIVE

The property damage claim in the instant matter was for a motorcycle, spare parts installed on it and a helmet. (Dkt. 25 at ¶28). Ms. Borrero had property damage liability policy limits of $10,000, therefore, the demand was within Ms. Borrero's limits of coverage and she had no excess exposure for the property damage claim.

As explicitly stated in paragraph 28 of the First Amended Complaint, Mr. Spalding's October 23, 2018 letter was his demand solely to resolve his property damage claim. The First Amended Complaint did not allege that Mr. Spalding (or any attorney on his behalf) ever issued a demand for his bodily injury claim. Neither did the First Amended Complaint allege there was a specific, joint offer to resolve the bodily injury and property damage claims jointly. . This is because there was only one demand made – Spalding's pro se property damage demand which Progressive met. Property damage liability and bodily injury liability are separate and distinct coverages under an auto policy of the type purchased by Ms. Borrero. The presence of a specific, joint demand to resolve together a plaintiff's bodily injury claim and his or her property damage claim is the only scenario recognized under Florida law where property damage claim handling may be relevant to a bad faith claim seeking

to collect an excess judgment for bodily injuries.  It is certainly the only scenario where a bad faith claim for bodily injury damages may be entirely based upon how the insurer handled a property damage claim. *See, e.g. Taylor v. GEICO Indem. Co.*, 8:12-CV-2448-T-AEP, 2015 WL 6750821, at *3 (M.D. Fla. Nov. 5, 2015), aff'd, 663 Fed. Appx. 740 (11th Cir. 2016); *Perrien v. Nationwide Mut. Fire Ins. Co.*, No. 8:08-CV-2586-T-30TGW, 2010 WL 2921621, at *3 (M.D. Fla. July 23, 2010); *Quigley v. Gov't Employees Ins. Co.*, 2008 WL 126598 (M.D. Fla. Jan.10, 2008); *Macola v. Gov't Employees Ins. Co.*, 410 F.3d 1359 (11th Cir. 2005); *Allstate Indem. Co. v. Oser*, 893 So. 2d 675, 676 (Fla. 1st DCA 2005).

That scenario is entirely absent in the First Amended Complaint and, consequently, Florida law does not permit Plaintiff to seek recovery of the bodily injury judgment as damages from Progressive, based upon a disputed allegation that Progressive mishandled Mr. Spalding's property damage claim since any alleged mishandling of a separate property damage claim cannot cause or bring about a lost opportunity to settle a bodily injury claim within policy limits.  Plaintiff repeatedly made it clear in his First Amended Complaint that the "lost opportunity to settle" was Progressive's failure to accept Mr. Spalding's "property damage demand" and timely resolve his property damage claim.  (Dkt. 25, ¶¶ 35, 36, 37, 38, 55, 68-71).

There is no causal connection between the alleged lost opportunity to settle the property damage claim and the excess judgment entered against Ms. Borrero for Mr. Spalding's bodily injuries.  Progressive is therefore entitled to judgment on the pleadings.

14

## D. SEPARATELY, PROGRESSIVE IS ENTITLED TO JUDGMENT PURSUANT TO §624.155(4)(a), Fla. Stat. (2023)

On March 24, 2023, Fla. Stat. § 624.155 was amended to include, for the first time, a safe harbor to protect insurers from a finding of bath faith liability. Specifically, the statute provides that "[a]n action for bad faith involving a liability insurance claim, including any such action brought under the common law, **shall not lie** if the insurer tenders the lesser of the policy limits or the amount demanded by the claimant within 90 days after receiving actual notice of a claim which is accompanied by sufficient evidence to support the amount of the claim." *Oxonian v. Geico Gen. Ins. Co.*, Case 8:24-cv-01351-MSS-AAS, Dkt. 38 (M.D. Fla. 01/03/25) citing §624.155(4)(a), Fla. Stat. (2023) (emphasis in the original)[4]. The Legislature expressly stated that the amendment applied to "causes of action filed after March 24, 2023." Id. citing §624.155 n. 1(B), Fla. Stat. (2023) ("Section 30, ch. 2023-15, provides that "[e]xcept as otherwise expressly provided in this act, **this act shall apply to causes of action filed after March 24, 2023.")** (emphasis in the original).

Here, it is undisputed that Plaintiff filed this cause of action for bad faith on December 19, 2023. *See* Dkt. 1-1. Therefore, the statute, as amended, applies to this action.

Pursuant to §624.155(4)(a), Fla. Stat. (2023), Progressive is entitled to a judgment in its favor because Progressive tendered its bodily liability policy limits

---

[4] *See* Exhibit A.

15

within the statutory 90-day period from the date of the accident.  Thus, by October

22, 2018 – within 3 weeks of the accident – Progressive had tendered the full bodily

injury limits of $10,000 to Mr. Spalding's attorney to settle Mr. Spalding's bodily

injury claim. (Dkt. 25 at ¶ 24; see also, Exhibit D to the First Amended Complaint,

Dkt. 25-4).  Progressive offered to tender the $10,000 bodily injury limit to a prior

attorney representing Mr. Spalding as early as October 11, 2018 – 10 days after the

accident. (Dkt.25 at ¶ 20; Dkt. 39, Affirmative Defense 2).  Progressive tendered the

amount demanded by Mr. Spalding for his property damage claim on January 3,

2019 – within 90 days of receipt of his demand dated October 23, 2018.  (Dkt. 25 at

¶57; Dkt. 39, Affirmative Defense 2).   The October 23, 2018 letter was the "actual

notice of a claim which is accompanied by sufficient evidence to support the amount

of the claim" that triggered the 90-day window with regard to the property damage

claim.  Therefore, pursuant to Fla. Stat. §624.155(4)(a), Progressive "tender[ed] the

lesser of the policy limits or the amount demanded by the claimant within 90 days

after receiving actual notice of a claim which is accompanied by sufficient evidence

to support the amount of the claim".   Progressive is entitled to a judgment as a

matter of law.  See *Oxonian*, supra, at p. 5 ("GEICO is entitled to judgment as a

matter of law because it tendered its $10,000 bodily injury policy limit to Ms.

Oxonian 23 days after the accident").  Stated differently, "[b]ecause it is undisputed

that [the insurer] tendered the policy limits within ninety days, no bad faith claim

can survive under Section 624.155(4)(a)." *Dial v. GEICO Gen. Ins. Co.*, No. 8:23-cv-

1650-VMC-TGW, 2024 U.S. Dist. LEXIS 127473 at * 28 n.1 (granting GEICO's

motion for summary judgment, because plaintiffs both obtained final judgments against the insured and initiated the cause of action after March 24, 2023, and it was undisputed that "GEICO tendered the policy limits on a global basis within ninety days and also offered the per-person policy limit of $10,000 to Dial within ninety days.").

Plaintiff may argue that Fla. Stat. §624.155(4)(a) may not be applied in this case because it would impair rights under the insurance contract. When the legislature enacted HB 837 that became Fla. Stat. §624.155(4)(a), it expressly stated as follows:

> section 29. This act shall not be construed to impair any right under an insurance contract in effect on or before the effective date of this act. To the extent that this act affects a right under an insurance contract, this act applies to an insurance contract issued or renewed after the effective date of this act [March 24, 2023].

Fla. HB 837, § 29 (2023).

Plaintiff, a bankruptcy trustee and an assignee or successor in interest of the insured, Ms. Borrero, may have some rights under the insurance contract. However, the insurance contract at issue does not give Ms. Borrero a right to pursue a claim for bad faith against her insurer. Under the circumstances of this case, that claim is not contractual. A right to bring a cause of action for insurance bad faith in excess of the policy limits is a creation of Florida statutes and/or Florida common law, not a contractual right. Therefore, the newly amended statute did not affect any of Ms. Borrero's rights under the insurance contract and Plaintiff as a bankruptcy trustee may not acquire contractual rights that Ms. Borrero never had. In the insurance

bad faith context, "the amendments to Section 624.155 did not affect any rights under the policy." See *Oxonian* at p. 8 citing *Dial*, 2024 U.S. Dist. LEXIS 127473 at *28 n.1.

As explained in *Oxonian* at 8, a plaintiff's "right" to bring a third-party bad faith action like the current lawsuit does not arise until a final judgment is entered against the insured.[5]   "The right to sue on a cause of action against an insurer for bad faith vests, typically, when the insured is found liable for a judgment that exceeds his or her policy limits".   See also, *Adams v. Progressive Express Ins. Co.*, No. 8:23-CV-789-MSS-NHA, 2024 WL 4664371, at *8 (M.D. Fla. Nov. 4, 2024) citing *Kelly v. Williams*, 411 So. 2d 902, 904 (Fla. 5th DCA 1982) ("[A] cause of action for bad faith arises when the insured is legally obligated to pay a judgment that is in excess of his policy limits"); *Michael v. Geico Gen. Ins. Co.*, No. 23-cv-1650, 2024 WL 3470363, at *10 n.1 (M.D. Fla. Jul. 19, 2024) (finding that § 624.155(4)(a) barred the plaintiffs' bad faith claim where the plaintiffs' " 'right' to file a bad faith action against Geico did not arise until the final judgments were entered against

---

[5] Under Florida common law, a third-party bad faith action generally involves a claim "in which an insured sues his liability insurance company for bad faith in failing to settle a claim which ultimately results in a third-party judgment against him in excess of the policy limits." *Tibbetts Lumber Co., LLC v. Amerisure Ins. Co.*, 451 F. Supp. 3d 1295, 1301 (M.D. Fla. 2020) citing *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541, 545 (Fla. 2012). On the other hand, "[a] first-party bad-faith action involves a case in which an insured sues his or her own insurance company for improper denial of benefits." Id. at 546 n.1. (emphasis added) A first-party bad faith claim is not recognized under the common law and may be brought only pursuant to Florida's "Bad Faith Statute," Section 624.155, Florida Statutes, which imposes the filing of a Civil Remedy Notice as a condition precedent to suit. Id. at 546–47.

Grant in May 2023 (after the effective date of the statute)").

Fla. Stat. §624.155(4)(a) only permits a prospective application – the cause of action has to accrue after the effective date of the statute. A retroactive application was not envisioned by the legislature and is not permitted. See *Adams v. Progressive Express Ins. Co.*, No. 8:23-CV-789-MSS-NHA, 2024 WL 4664371, at *8 (M.D. Fla. Nov. 4, 2024)(where Plaintiffs' cause of action for bad faith against Progressive accrued when the final judgments were entered against Plaintiffs on July 5, 2022 and January 17, 2023, Plaintiffs' right to file a bad faith action against Progressive vested before the effective date of House Bill 837, March 24, 2023. Accordingly, the retroactive application of § 624.155(4)(a) to this action would impair Plaintiffs' vested right").

Here, Ms. Borrero's right to bring an action against Progressive did not accrue until a final judgment was entered against her on April 27, 2023, more than a month after the statute became effective on March 24, 2023. Ms. Borrero did not have any bad faith "rights" before March 24, 2023. See *Oxonian*, at p. 9, citing *Williams v. Am. Optical Corp.*, 985 So. 2d 23, 27 (Fla. 4th DCA 2008) ("Florida law is well established that the right to sue on an inchoate cause of action — one that has not yet accrued — is not a vested right because no one has a vested right in the common law, which the Legislature may substantively change prospectively."), aff'd sub nom. *Am. Optical Corp. v. Spiewak*, 73 So. 3d 120 (Fla. 2011); see also *Dial*, 2024 U.S. Dist. LEXIS 127473 at *28 n.1 (noting that the amendments to Section 624.155 did not affect plaintiffs' rights under the insurance policy because such a right did not arise

19

until the final judgments were entered against the insured in May 2023, which was after the effective date of the statute).

Where a plaintiff's cause of action, if any, accrues after the effective date of the statute, the insurer may utilize the protection of Fla. Stat. 624.155. See *Oxonian*, at p. 10:

> Because HB 837 applies prospectively, and Plaintiffs' cause of action, if they have one, did not accrue until after the effective date of the statute, GEICO is protected by HB 837's safe harbor provision in this case. No bad faith liability can be imposed against it.

Likewise, in this case, because the Plaintiff's rights, if any, did not accrue until after March 24, 2023 and because Progressive complied with the 90 day safe harbor provision, Fla. Stat. §624.155(4)(a) protects Progressive from any bad faith action in this matter.  Progressive is entitled to judgment on the pleadings as a matter of law.

Respectfully submitted on February 12, 2025.

SEGUNDO LAW GROUP

_____s/Jenna Worden_____
**JENNIFER C. WORDEN**
FBN: 0498191
2935 First Avenue North, 2nd Floor
St. Petersburg, FL 33713
(727)894-3535
Counsel for Defendant Progressive
Service email:  Service@CivilLit.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I submitted the foregoing via CM/ECF which will serve it upon counsel for Plaintiff at the addresses registered with the Court on this 12th day of February 2025.

SEGUNDO LAW GROUP

s/Jenna Worden
**JENNIFER C. WORDEN**
FBN: 0498191
(727) 894-3535
Service@civillit.com