UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GENE CHAMBERS,

    Plaintiff,

v.                                                  Case No: 6:24-cv-141-JSS-DCI

PROGRESSIVE SELECT
INSURANCE COMPANY,

    Defendant.
_____/

## ORDER

Defendant moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. 40.) Plaintiff opposes the motion. (Dkt. 45.) Upon consideration, for the reasons outlined below, the court grants the motion.

### BACKGROUND[1]

Angela Borrero collided with a motorcycle driven by James Spalding in October 2018. (Dkt. 25 ¶ 5.) Borrero was allegedly at fault for the accident. (*Id.*) At all relevant times, Borrero was insured under an automobile liability policy issued by Defendant, with bodily injury limits of $10,000 per person and $20,000 per occurrence and a property damage limit of $10,000. (*See id.* ¶ 4.) The accident seriously injured Spalding and damaged his motorcycle and helmet. (*Id.* ¶¶ 5–6.)

---

[1] In general, the court draws the facts from the amended complaint (Dkt. 25). *See Crumpton v. Stephens* (*In re Northlake Foods, Inc.*), 715 F.3d 1251, 1255 (11th Cir. 2013) ("accept[ing] as true all allegations in the complaint and constru[ing] them in the light most favorable to the nonmoving party").

Borrero notified Defendant of the collision on October 1, 2018. (*Id.* ¶ 9.) The next day, Defendant assigned separate adjusters to handle the claims: Amanda Cool for the property damage claim and Jowanna Henry for the bodily injury claim. (*Id.* ¶¶ 10–12.) On October 11, 2018, Henry sent a settlement check for the $10,000 bodily injury limit, along with a proposed release, to the attorney thought to be representing Spalding. (*Id.* ¶¶ 14–16, 18–20.) On October 15, 2018, attorney Paul Perkins sent a letter of representation to Defendant stating that he would be representing Spalding moving forward. (*Id.* ¶ 22.) In response, Henry sent a letter to Perkins on October 23, 2018, again offering $10,000 in bodily injury coverage in exchange for a release. (*Id.* ¶¶ 24–26.) The pleadings do not make clear whether Spaulding responded in some way to Defendant's offer to settle his bodily injury claim, but they indicate that Spalding did not accept the offer. (*See* Dkts. 25, 39.) As Defendant puts it in the answer, "within ten days of the accident[,] [Defendant] offered to settle . . . Spalding's bodily injury claim for . . . Borrero's applicable bodily injury liability policy limits, but . . . Spalding never accepted" the offer. (Dkt. 39 at 11.)

On October 25, 2018, Cool received a demand letter from Spalding requesting compensation for his damaged property. (*Id.* ¶¶ 28–29.) The letter contained a time-sensitive demand that Defendant pay $9,627.52 to settle the property damage claim "within [ten] days," and it supported this request with a printout of the Kelley Blue Book value of the motorcycle, receipts and bank statements reflecting the cost of parts installed on the motorcycle, and a receipt for the helmet. (*Id.* ¶ 28.) On November 7, 2018, after appraising the motorcycle, Cool responded to Spalding via email and

offered to settle the property damage claim for $8,124.83. (*Id.* ¶¶ 31, 34–35.)

On November 12, 2018, after Defendant rejected Spalding's time-sensitive demand, Spalding filed a negligence lawsuit in Florida state court, suing Borrero for the bodily injuries and property damages he suffered as a result of the accident. (*Id.* ¶ 36; *see* Dkt. 25-7.) On November 27, 2018, Defendant's claims manager Cheryl Traylor noted that Spalding "had not replied to [Defendant's] counteroffer to his property damage demand." (Dkt. 25 ¶ 39.) Traylor instructed Cool to send a property damage offer to Spalding, (*id.*), and Cool sent Spalding a letter with a property damage settlement offer of $8,372.33, (*id.* ¶ 40).

When Spalding failed to respond to the property damage offer, Defendant regarded the non-response as a rejection and transferred the claim to Jason Gray, a claims specialist lead. (*Id.* ¶¶ 43–44.) Gray sent multiple letters to Spalding through his counsel, Perkins. (*Id.* ¶¶ 49–50.) These letters sought to clarify Spaulding's demand for the property damages and, according to Plaintiff, "falsely claimed" that the bodily injury claim had settled when it had not (because Spalding did not accept either of Defendant's October 2018 offers of the $10,000 bodily injury limit). (*Id.*)

On January 3, 2019, Gray sent Spalding an offer to settle the property damage claim for the originally requested amount of $9,627.52, plus $46.84 in statutory interest. (*Id.* ¶ 52.) Although Spalding agreed to settle the property damage claim, he continued to litigate the bodily injury claim. (*Id.* ¶ 57.) In anticipation of a multi-million-dollar excess judgment, Borrero filed for protection in bankruptcy pursuant to 11 U.S.C. § 701, resulting in the appointment of Plaintiff as the bankruptcy trustee. (Dkt. 25 ¶¶

57–59.) The underlying action proceeded, and in January 2023, the jury returned a verdict in favor of Spalding and against Borrero. (*Id.* ¶ 61.) On April 27, 2023, the state court entered a final judgment against Borrero for $7,418,391.57. (*Id.* ¶ 62.)

Following the entry of final judgment, Plaintiff filed the instant bad faith lawsuit in state court. (*See* Dkt. 1-1.) Plaintiff alleges that Defendant breached its nondelegable fiduciary duty of good faith to Borrero under Florida common law by failing to settle the claims against her and thereby causing her damages, including entry of the excess judgment. (*See id.* at 26, 30, 31.) Defendant removed the case to this court based on diversity jurisdiction. (Dkt. 1 at 3–5.) In its answer, Defendant asserts that a Florida statute bars Plaintiff's bad faith claim because Defendant timely tendered the applicable amounts to Spalding. (*See* Dkt. 39 at 12.) *See* Fla. Stat. § 624.155(4)(a).

## APPLICABLE STANDARDS

"When a case is removed from state to federal court on the basis of diversity of citizenship," as this case was, the court "applies state substantive law and federal procedural law." *Gianassi v. State Farm Mut. Auto. Ins. Co.*, 60 F. Supp. 3d 1267, 1271 (M.D. Fla. 2014); *see Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996) ("[F]ederal courts sitting in diversity apply state substantive law and federal procedural law."). Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial. Fed. R. Civ. P. 12(c). A "[j]udgment on the pleadings is proper when no issues of material fact exist[] and the moving party is entitled to judgment as a matter of law

based on the substance of the pleadings and any judicially noticed facts." *Cunningham v. Dist. Att'y's Off. for Escambia Cnty.*, 592 F.3d 1237, 1255 (11th Cir. 2010) (quotation omitted). Such a motion is subject to the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018). As such, in determining whether a party is entitled to judgment on the pleadings, a court must "accept the facts in the [nonmoving party's pleading] as true and . . . view them in the light most favorable to the nonmoving party." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). "To decide a motion for judgment on the pleadings, a court may consider any of the pleadings, including the complaint, the answer, and any written instruments attached to them." *Burgest v. Bd. of Regents*, No. 4:19-cv-335, 2021 WL 1187088, at *2, 2021 U.S. Dist. LEXIS 59569, at *4 (S.D. Ga. Mar. 29, 2021) (quotation omitted).

Because the parties' dispute requires statutory interpretation to reach a resolution, the court sets forth the following standards applicable to statutory interpretation. To begin with, a "statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *United States v. Ballinger*, 395 F.3d 1218, 1236 (11th Cir. 2005) (quoting *TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001)); *accord Hechtman v. Nations Title Ins. of N.Y.*, 840 So. 2d 993, 996 (Fla. 2003) ("It is an elementary principle of statutory construction that significance and effect must be given to every word, phrase, sentence, and part of the statute if possible, and words in a statute should not be construed as mere surplusage."). Further, "[u]nless otherwise defined, statutory terms are generally

interpreted in accordance with their ordinary meaning." *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006); *accord Redus Fla. Com., LLC v. Coll. Station Retail Ctr., LLC*, 777 F.3d 1187, 1191 (11th Cir. 2014) ("Generally, words are interpreted with their ordinary and plain meaning because [courts] assume that [a legislature] uses words in a statute as [the words] are commonly understood." (alteration adopted and quotation omitted)); *State v. Brake*, 796 So. 2d 522, 528 (Fla. 2001) ("[W]here a statute does not specifically define words of common usage, such words are construed in their plain and ordinary sense."). Additionally, although courts "may consult legislative history to elucidate a statute's ambiguous or vague terms," courts cannot use legislative history "to contradict unambiguous statutory text or to read an ambiguity into a statute which is otherwise clear on its face." *Garcia v. Vanguard Car Rental USA, Inc.*, 540 F.3d 1242, 1247 (11th Cir. 2008); *accord BellSouth Telecomms., Inc. v. Meeks*, 863 So. 2d 287, 289 (Fla. 2003) (permitting courts to "explore legislative history to determine legislative intent" when "statutory language is unclear").

## ANALYSIS

Pursuant to section 624.155(4)(a) of the Florida Statutes, "[a]n action for bad faith involving a liability insurance claim, including any such action brought under the common law, shall not lie" provided that "the insurer tenders the lesser of the policy limits or the amount demanded by the claimant within [ninety] days after receiving actual notice of a claim which is accompanied by sufficient evidence to support the amount of the claim." Fla. Stat. § 624.155(4)(a). Considering the plain language of section 624.155(4)(a), where it is undisputed that an insurance company tendered the

lesser of the policy limits or the amount demanded by the claimant within ninety days, a plaintiff cannot pursue a bad faith claim against the insurance company. *See Oxonian v. GEICO Gen. Ins. Co.*, No. 8:24-CV-1351-MSS-AAS, 2025 WL 555621, at *3–5, 2025 U.S. Dist. LEXIS 1958, at *9–12 (M.D. Fla. Jan. 3, 2025) (granting a motion for judgment on the pleadings for a bad faith claim in favor of an insurance company where final judgments were received and the cause of action was initiated after March 24, 2023, and the company tendered the policy limits within ninety days); *Dial v. GEICO Gen. Ins. Co.*, No. 8:23-cv-1650-VMC-TGW, 2024 WL 3470363 at *10, 2024 U.S. Dist. LEXIS 127473, at *29 (M.D. Fla. July 19, 2024) (granting summary judgment on a bad faith claim in favor of an insurance company on the same basis).

Here, Plaintiff initiated this case on December 19, 2023, after the statute's effective date of March 24, 2023. (*See* Dkt. 1-1.) Based on the pleadings, Defendant is entitled to judgment as a matter of law under the statute. It is undisputed that Defendant tendered the $10,000 bodily injury policy limit to Spalding (through his counsel) ten days after Defendant learned of the accident and again twenty-two days after that date. (Dkt. 25 ¶¶ 9, 19–20, 24–26; Dkt. 39 at 3–5.) Both tenders were therefore made well before the statute's ninety-day deadline. Further, on October 25, 2018, Defendant received Spalding's property damage request along with the evidence supporting it, and within ninety days of the request, on January 3, 2019, Defendant tendered the requested amount plus interest. (Dkt. 25 ¶¶ 28–29, 51–52, 57; Dkt. 39 at 5, 8–9.) Accordingly, the motion for judgment on the pleadings is due to be granted. *See* Fla. Stat. § 625.144(4)(a).

Plaintiff does not dispute that Defendant made the requisite tenders; instead, Plaintiff relies on the argument that it is impermissible to apply the statute retroactively. (*See* Dkt. 45.) Plaintiff contends that the statute cannot be applied retroactively because doing so would impair the insured's rights under the insurance contract. (*Id.* at 14.) Plaintiff bolsters this argument by relying on legislative history. (*Id.* at 13.) Because the statute is clear on its face, the court need not consider its legislative history. *See Garcia*, 540 F.3d at 1247; *BellSouth*, 863 So. 2d at 289.

The court nonetheless considers Plaintiff's legislative-history argument and finds it unpersuasive. Plaintiff cites section 29 of the bill for the statute, (Dkt. 45 at 13), which states that the statute "shall not be construed to impair any right under an insurance contract in effect on or before the effective date." H.B. 837, 2023 Leg., Reg. Sess. § 29 (Fla. 2023). Section 29 further states that "[t]o the extent that this act affects a right under an insurance contract, this act applies to an insurance contract issued or renewed after the effective date [March 24, 2023]." *Id*. Plaintiff also maintains that an insurance company's "duty of good faith to its insured is an implied contractual term" and is therefore a contractual right covered by section 29. (Dkt. 45 at 13–14.) Even if such a duty were an implied contract term, courts in this district have persuasively held that the amendments to section 624.155 did not affect any rights arising under an insurance policy. *See Dial*, 2024 WL 3470363, at *10 n.1, 2024 U.S. Dist. LEXIS 127473, at *29 n.1 (explaining that the right to bring the bad faith action did not arise under the insurance policy because the right did not vest until the cause of action accrued after the entry of the final judgment); *see also Oxonian*, 2025 WL

555621, at *4, 2025 U.S. Dist. LEXIS 1958, at *10–12 (applying *Dial*).

The "determinative point in time separating prospective from retroactive application" of a statute "is the date the cause of action accrues, which is the date that a party has the right to sue." *Suarez v. Port Charlotte HMA, LLC*, 171 So. 3d 740, 742 (Fla. Dist. Ct. App. 2015) (cleaned up). "A cause of action accrues when the last element constituting the cause of action occurs." Fla. Stat. § 95.031(1); *Lopez v. GEICO Cas. Co.*, 968 F. Supp. 2d 1202, 1206 (S.D. Fla. 2013); *accord Hearndon v. Graham*, 767 So. 2d 1179, 1185 n.2 (Fla. 2000) (explaining that a "claim generally accrues when all of the events have occurred which fix the alleged liability of the defendant and entitle the plaintiff to institute an action" (quotation omitted)). Generally, in the insurance context, "a cause of action for bad faith arises" only after "the insured is *legally obligated* to pay a judgment . . . in excess of [the] policy limits." *Kelly v. Williams*, 411 So. 2d 902, 904 (Fla. Dist. Ct. App. 1982).

In the instant case, the bad faith cause of action accrued when the final judgment was entered against Plaintiff on April 27, 2023, after the statute's effective date of March 24, 2023. *See id.*; *see also Oxonian*, 2025 WL 555621, at 4, 2025 U.S. Dist. LEXIS 1958, at *11 (stating that the "'right' to file a bad faith action against [the defendant insurance company] did not arise until the final judgment was entered against the insureds" in March and April 2023 after the statute's effective date); *Dial*, 2024 WL 34703632024, at *10 n.1, U.S. Dist. LEXIS 127473, at *28 n.1 (stating the same with respect to a final judgment entered in May 2023). Accordingly, the court applies the statute prospectively, not retroactively. In other words, the court does not

look backwards to the terms of the contract but rather looks forward to the cause of action, which arose after the entry of final judgment and thus after the statute's effective date. Because the court does not apply the statute retroactively, Plaintiff's arguments against the retroactive application of the statute, (Dkt. 45 at 17), are not persuasive. As section 624.155 is dispositive of Plaintiff's bad faith claim, the court does not reach Defendant's other arguments. (*See* Dkt. 40 at 10–14.) Because the statute applies prospectively, and Plaintiff's cause of action, if any, accrued after the effective date, no bad faith liability can be imposed against Defendant in this case.

## CONCLUSION

Accordingly:

1. Defendant's motion for judgment on the pleadings (Dkt. 40) is **GRANTED**.
2. Plaintiff's bad faith claim against Defendant is **DISMISSED with prejudice**.
3. The Clerk is **DIRECTED** to enter judgment in favor of Defendant, to terminate any pending motions and deadlines, and to close this case.

**ORDERED** in Orlando, Florida, on June 12, 2025.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record